IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | * | |
| | * | |
| v. | * | Case No.: 1:21-cr-0084-PLF-2 |
| | * | |
| DANIEL P. ADAMS | * | |

**DEFENDANT DANIEL ADAMS' APPEAL OF DETENTION ORDER AND
MEMORANDUM IN SUPPORT FOR AN ORDER
GRANTING PRE-TRIAL RELEASE**

COMES NOW Defendant, Daniel Adams, by and through undersigned counsel, appeals

the Detention Order dated February 17, 2021, detaining Mr. Adams pursuant to 18 U.S.C. §

3142(e)(1) pending trial, and in support thereof, states as follows:

I.      **Introduction**

Defendant was indicted on February 5, 2021 upon charges of Civil Disorder 18 USC §

231(a)(3), Obstruction of an Official Proceeding, 18 USC § 1512, Assaulting, Resisting or Im-

peding Certain Officers 18 USC § 111(a)(1), Entering and Remaining in a Restricted Building or

Grounds, 18 USC § 1752(a)(1), Disorderly and Disruptive Conduct in a Restricted Building or

Grounds, 18 USC § 1752(a)(2), Disorderly Conduct in a Capitol Building, 40 USC §

5104(e)(2)(D), Impeding Passage Through the Capitol Grounds or Buildings, 40 USC §

5104(e)(2)(E), and Parading, Demonstrating, or Picketing in a Capitol Building, 40 USC §

5104(e)(2)(G).

A detention hearing was held before the Magistrate Judge Zia M. Faruqui on February 17, 2021.  At said hearing, the Magistrate Judge denied Defendant's request for release.  Counsel is appointed pursuant to the Criminal Justice Act.  Following denial of release, he promptly submitted pursuant to eVoucher a request for the transcript of said hearing, but as of the time of filing the transcript has yet to be received.  Counsel will promptly supplement upon receipt.

## II.      Applicable Law

 "If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." 18 U.S.C. § 3145(b). When acting on such a motion, the court reviews the Magistrate Judge's order *de novo*. *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992); *United States v. Stewart*, 19 Fed. Appx. 46, 47 (4th Cir. 2001); *United States v. Cutter*, 637 F. Supp. 2d 348, 350 (W.D.N.C. 2009); accord *United States v. Beauchamp-Perez*, 822 F. Supp. 2d 7, 9 (D.D.C. 2011) (citing *United States v. Hudspeth*, 143 F. Supp. 32, 35-36 (D.D.C. 2001)). Thus, this Court makes "an independent determination of the proper pretrial detention or conditions of release." *Stewart*, 19 Fed. Appx. at 47.

The Bail Reform Act ("Act") generally requires courts to impose the least restrictive conditions to ensure the defendant's appearance in court and authorizes courts to amend a bail release order to impose different conditions of release. See 18 U.S.C. § 3142(c). Any discussion of bail is founded on the presumption of innocence. See *Stack v. Boyle*, 342 U.S. 1, 4 (1951).

The "traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction." Id. Thus, "in our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

When a defendant seeks to remain free pending trial, 18 U.S.C. § 3142(f) governs. The statute provides that the judicial officer shall hold a hearing to determine whether there are any conditions or combination of conditions that will reasonably assure the appearance of the person and whether the person poses a danger to the community. See id. The judicial officer shall also take into account available information concerning the nature and circumstances of the offense charged, including whether the offense is a crime of violence; the weight of the evidence against the person; the history and characteristics of the person, including the person's character, family ties, employment, past conduct, criminal history, record concerning appearance at court proceedings, and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. See 18 U.S.C. § 3142(g).

In making the determination as to whether any condition or combination of conditions of release will assure the defendant's appearance at trial, findings with respect to risk of flight must be supported by a preponderance of the evidence. See id.

Importantly, there are certain types of cases in which a rebuttable presumption applies, that "no condition or combination of conditions will reasonably assure the safety of any other person and the community," but that does not apply to Mr. Adams.

### III.     The Magistrate Judge's Ruling

As stated, *supra*, counsel has requested a copy of the transcript of said hearing, and will promptly forward to the Court upon receipt.  That said, counsel's notes reflect that Judge Faruqui found that Defendant was not a flight risk, but that the events of January 6, 2021 remain ongoing, and that the danger had not passed, and as such, Defendant was a threat to the safety of the community.

### IV.     Alleged Facts

Counsel need not reiterate much about the general events of January 6, 2021 as they are by now well known to the Court, and the public in general.  Instead, this Memorandum focuses on the specific allegations against Defendant, and his sole codefendant.[1]

The complaint in this case alleges that Cody Connell, the codefendant (hereafter "Connell") was first identified by law enforcement as someone who had breached the Capitol on January 7, 2021.  Connell posted on social media "I have more videos of us breaching the Capitol but not gonna post them.  We will be back and it will be a lot worse than yesterday!"  See 1:21-mj-0081-ZMF at 2.  Connell bragged in advance that he was "gonna be right there in the middle of it."  Id. at 4.

Defendant and Connell are reported to have gone up the Capitol Steps, with Connell posting on social media all the while.  Defendant reportedly asked the crowd "[l]et's go.  Are you ready to push?"  Id. at 8.  Law Enforcement are aware of this because Connell posted it.  Indeed, there is no allegation of any social media streaming by Adams at all.

---

[1] Counsel had hoped to receive discovery prior to the filing of this Memorandum, but it has yet to be received.  Counsel remains hopeful that some will be sent prior to a hearing in this matter.

There is purportedly a video of Adams "physically engaging" with officers at the top of steps to the Capitol building.  Adams by all accounts comes off worse in this altercation and is left holding his head at the end of the video.  The Government's initial detention memorandum states that Defendant "[t]hroughout the entire encounter, Adams holds a smartphone and records his actions, sometimes looking into the camera."  See ECF 12 at 4.  Thus, he is presumably physically engaging with one hand only, while the other films.  What is undoubtedly true is that as a result of said altercation, he was "bloodied."  Id.  Indeed, at the initial detention hearing Defendant showed the Magistrate his head on the video screen, and the scar that was still visible.

Connell later reports on social media that he and others breached the Capitol and that they "got clubbed and shot with rubber bullets."  He ended that discussion with another on social media by stating that it's "gonna come" to civil war.  Additionally, Connell is known to have had discussions with others about purchasing long-rifle firearms, ammunition and body armor to bring with them.  Id. at 9.  He bragged that the only way he would return to his home state of Louisiana was in a body bag.  Id.  Despite all of these facts - - Connell remains free pending trial in this matter, while Defendant is incarcerated.

V.    **Argument**

This memo focuses on the narrow issues of a) will Defendant come to Court? And b) is he a danger to the community during the pendency of this case?  A focus on those narrow issues results in a resounding answer that he will indeed, attend all hearings, and will be no threat to anyone during the pendency of this matter.

Counsel submits that this Court should not permit the grossly disproportionate treatment between Defendant and Connell.  Mr. Connell has never been held in pretrial detention, Defendant has never been released.

5

Defendant, if released by this Court, will promptly relocate to his home in Texas.  He has no objection to this Court entering conditions of release that prohibit him from leaving that state, except for in-person Court hearings or attorney meetings.

With regard to Mr. Connell's statements such as he planned to return and do worse, or that civil war in the foreseeable future, there is absolutely no evidence to suggest that Defendant endorsed that statement - - or that he even saw it.

Defendant carried no weapon on January 6, 2021.  His lawfully owned weapons were removed from the house upon his arrest, and counsel will not be requesting their return during the pendency of this matter.

Defendant has, in effect, no real criminal history.  There are thirty-two letters attached to this Memorandum, as Exhibit A, all of which speak to Defendant's exemplary character.  From rescuing people following hurricanes, to being willing to give friends and neighbors 'the shirt off his back,' to how hard he has worked from childhood on, to coaching youth baseball, and on it goes.

Mr. Adams' is no threat to anyone in Texas - - to the contrary - - he is an asset to all those around him.  Defendant's wife is a third-party custodian poster child.  She has no record, and stays at home full time.  She is happy to deliver Defendant's passport to any courthouse, should this Court so order it.

There is no allegation that Defendant is a member of a far-right organization.  There is, in short, no basis to believe he is a danger to anyone and every basis to believe that he will be an asset to his community and a provider for his family.  Defendant's resume is attached as Exhibit B.  As the Court will no doubt note, he has several marketable qualifications, and has a work his-

tory to be envied.   Moreover, as the attached letter by John Kuhn makes clear, he is aware what Mr. Adams is charged with and nevertheless, there is a good job waiting for him.

At the detention hearing before the Magistrate, the Government mentioned how early in the process Defendant and Connell entered the Capitol, but what was missing from the discussion was how early Defendant *left* it.   To the best of counsel's information and belief, Defendant was inside the Capitol for only a few minutes.   Ostensibly trying to find paper towels or bandages due to the blood coming from his head.   He then promptly left.[2]   There is no allegation that he made it into any of the more private parts of the building itself.   He was not on the Senate Floor. He did not enter the offices of any Members of Congress.

Lastly, it is also clear that Defendant's conditions of confinement are onerous, given the nature of the charges.   He is being held in relative isolation in C2A and C2B of the Correctional Treatment Facility.   Initially, there was black mold on the wall of his cell, which Defendant endeavored to clean during the one (1) hour per day that he was allowed to leave his cell.   He has no access to the law library.   He has not been supplied any razor and is forced to burn his facial hair off with Nair.   The only tap from which Defendant can get water to hydrate and wash previously had some sort of a moldy type substance coming out of it.   Defendant typically attached a sock to the tap before filling up his water bottle, in a bid to filter out impurities.   At one point, he placed a sick call for nine (9) consecutive days, before he was seen by medical.   He has previously slept on the floor because, when he lying in bed, he was often soaked by the dripping coming

---

[2] Attached as Exhibit C is a receipt for a Motel 6, in Troutville, VA, where Defendant stayed the night of January 6, 2021.   As the receipt shows, Defendant checked in at 8:30 PM.   According to Google Maps, the hotel is 225 miles from the Capitol Building and a drive of more than 3.5 hours.   Given that Defendant had to leave the capitol, take a train, and then travel in a vehicle more than 200 miles, this further buttresses the contention that Defendant spent only a very limited amount of time inside the Capitol.

from the walls.  When counsel visited him, he arrived at the facility at 11:54 AM and saw his client at 1:05 PM.  He was informed that this was because Defendant is "Special Handling" and there are a very limited number of Officers that can transport him.  Indeed, the very fact that counsel felt the need to visit him during a pandemic, which was his first in person visit in almost a year, speaks to the fact that, in Mr. Adams' case, pretrial confinement is especially problematical.[3]

## VI.    Conclusion

For all of these reasons, counsel requests that this Court release Mr. Adams to the third-party custodianship of his wife in Texas, and limit his travel outside the state.  Defendant does not oppose any other conditions this Court might believe necessary such as surrendering of his passport, or obtaining no firearms.

Respectfully Submitted,


_____/s/_____

Gary E. Proctor
Law Offices of Gary E. Proctor, LLC
8 E. Mulberry Street
Baltimore, Maryland 21202
Tel:    410.444.1500
Fax:    443.836.9162

---

[3] For the problems, generally, concerning the Capitol Riot cases see
https://www.politico.com/news/2021/03/10/capitol-riot-court-cases-475081 (last accessed 3/12/21).

CERTIFICATE OF SERVICE

I hereby certify that on this day, March 15, 2021 a copy of the foregoing was served on all parties via ECF.

_____/s/_____

Gary E. Proctor