## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-cr-84-PLF |
| | : | |
| CODY PAGE CARTER CONNELL & | : | |
| DANIEL PAGE ADAMS, | : | |
| | : | |
| Defendants. | : | |

## STATEMENT OF FACTS FOR STIPULATED TRIAL

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, and the defendants, Cody Page Carter Connell and Daniel Page Adams,

with the concurrence of their attorneys, hereby submit the elements for each count in the Criminal

Information and statements of facts for stipulated trial in this action.

### Elements of the Offenses

A. *Count One: Civil Disorder*

The essential elements of the offense of civil disorder, in violation of 18 U.S.C. §231(a)(3), each

of which the government must prove beyond a reasonable doubt, are as follows:

1. The defendants knowingly committed an act or attempted to commit an act with the
   intended purpose of obstructing, impeding, or interfering with one or more law
   enforcement officers, that is United States Capitol Police Officers J.G., T.M., B.S., B.M.,
   and J.D.;

2. At the time of the defendants' actual or attempted act, Officers J.G., T.M., B.S., B.M., and
   J.D. were engaged in the lawful performance of their official duties incident to and during
   a civil disorder;

1

3. The civil disorder, in any way or degree, obstructed, delayed, or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.[1]

B. *Count Two: Obstruction of an Official Proceeding and Aiding and Abetting*

The essential elements of the offense of obstruction of an official proceeding, in violation of 18 U.S.C. § 1512, each of which the government must prove beyond a reasonable doubt, are as follows:

1. The defendants attempted to or did obstruct or impede an official proceeding;

2. The defendants intended to obstruct or impede the official proceedings;

3. The defendants acted knowingly, with awareness that the natural and probable effect of their conduct would be to obstruct or impede the official proceedings; and;

4. The defendants acted corruptly.

The essential elements of the offense of aiding and abetting others to commit the offense of obstruction of an official proceeding, in violation of 18 U.S.C. § 1512, each of which the government must prove beyond a reasonable doubt, are as follows:

1. That others committed obstruction of an official proceeding by committing each of the elements of the offense charged;

2. That the defendants knew that obstruction of an official proceeding was going to be committed or was being committed by others;

3. That the defendants performed an act or acts in furtherance of the offense;

---

[1] A "federally protected function" means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof.

4. That the defendants knowingly performed an act or acts for the purposes of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceedings; and

5. That the defendants did that act or acts with the intent that others commit the offense of obstruction of an official proceeding.

C. *Count Three: Assaulting, Resisting, or Impeding Certain Officers*

The essential elements of the offense of assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. §111(a)(1), each of which the government must prove beyond a reasonable doubt are as follows:

1. The defendants assaulted, resisted, opposed, impeded, intimidated, or interfered with any officer or employee of the United States or of any agency in any branch of the United States Government, that being United States Capitol Police Officers J.G., T.M., B.S., B.M., and J.D.;

2. The defendants did so with some use of force that involved physical contact or the intent to commit another felony;

3. That the defendants did such acts voluntarily and intentionally; and

4. The defendants did so while the officer or employee was engaged in or on account of the performance of official duties.

3

D. *Count Four: Entering and Remaining in a Restricted Building or Grounds*

The essential elements of the offense of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1), each of which the government must prove beyond a reasonable doubt are as follows:

1. The defendants entered or remained in a restricted building or grounds without lawful authority do so; and,

2. That the defendant did so knowingly.

E. *Count Five: Disorderly and Disruptive Conduct in a Restricted Building or Ground*

The essential elements of the offense of disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. §1752(a)(2), each of which the government must prove beyond a reasonable doubt, are as follows:

1. That the defendants engaged in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds.

2. That such conducted occurred when, or so that, such conduct, in fact, impeded or disrupted the orderly conduct of Government business or official functions; and,

3. That the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

F. *Count Six: Disorderly Conduct in a Capitol Building*

The essential elements of the offense of disorderly conduct in the Capitol buildings or grounds thereof, in violation of 40 U.S.C. § 5104(e)(2)(D), each of which the government must prove beyond a reasonable doubt, are as follows:

4

1. The defendants engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings;

2. The defendants did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress; and,

3. The defendants acted willfully and knowingly.

H. *Count Seven: Parading, Demonstrating, or Picketing in a Capitol Building.*

The essential elements of the offense of parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G), each of which the government must prove beyond a reasonable doubt, are as follows:

1. The defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings; and,

2. The defendant acted willfully and knowingly.

**Statement of Offense**

*The Attack at the U.S. Capitol on January 6, 2021*

1. The United States Capitol Building (hereinafter, "the Capitol"), which is located at First Street SE in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (hereinafter, "USCP"). Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

5

3.  On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session is set out in the Twelfth Amendment to the United States Constitution and The Electoral Count Act (3 U.S.C. §§15-18). The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.  As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the Capitol, and USCP were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5.  At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades. USCP Officers were forced to retreat and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required. Certain members of the crowd assaulted USCP officers and members of the Washington, D.C., Metropolitan Police Department (hereinafter, "MPD) who were assisting the USCP.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the USCP and MPD attempted to maintain order and keep the crowd from entering the Capitol. However, at 2:13 p.m., individuals in the crowd forced entry into the Capitol, including by breaking windows and assaulting members of law enforcement.

7. Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. on January 6, 2021. In light of the dangerous circumstances, including the danger posed by individuals who had entered the Capitol without any screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and the USCP confirmed that the building was secured. The Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

*The Defendants' Participation in the Capitol Riot*

8. Cody Page Carter Connell (hereinafter, "Connell") and Daniel Page Adams (hereinafter, "Adams") (collectively, "the Defendants") travelled to Washington, D.C., from their respective homes in Louisiana and Texas to attend the "Stop the Steal" rally that the former president was holding at the Ellipse on January 6, 2021. The Defendants posted a photo to social media to document their presence in Washington and their participation in the rally:

7



9.  After the rally, Connell and Adams travelled from the National Mall to the West Front of the United States Capitol.

10. At approximately 2:00 p.m., the Defendants moved through the scaffolding that had been constructed for the upcoming inauguration on the West Front of the Capitol. While in the scaffolding, Connell posted a photo to Snapchat in which he stated that he and Adams were experiencing the effects of tear gas under the scaffolding.



They tear gassing us

11. Between 2:00 p.m. and 2:08 p.m., the Defendants moved through the scaffolding and mounted the Northwest Steps.

12. By 2:09 p.m., the Defendants were at the head of the crowd that had climbed the Northwest Steps and were standing face-to-face with several USCP officers who were instructing the crowd not to continue advancing.

13. Around 2:10 p.m. Adams said to members of the crowd "Are you ready to push? Come on! Let's go!" Adams, Connell, and the crowd then began to push forward against the USCP officers and charge up the stairs. In response to the Defendants' and other members of the crowd's respective pushes and the increasing violence of the crowd, the USCP officers began to retreat up the stairs. As the officers began to retreat, the Defendants and the crowd behind

9

them pursued them into the Northwest Courtyard.

14. At 2:13 p.m., the Defendants were outside of the Senate Wing Door and filmed other rioters smashing windows on either side of the door. The Defendants also filmed other rioters smashing through windows and opening the door to the rest of the crowd.

15. Less than thirty seconds after the first breach of the Capitol, the Defendants entered the Capitol through the now-open Senate Wing Door at 2:13 p.m. The Defendants did not enter through the broken windows.

16. Both Connell and Adams were filming themselves as the entered the Capitol. As Adams crossed the threshold into the Capitol, Adams stated, "This is my house!" As Connell crossed the threshold, he stated, "We are in our house!" An alarm was sounding on the Senate Wing Door as the Defendants passed through it.

17. The Defendants exited the Capitol via the Senate Wing Door between 2:16 p.m. and 2:17 p.m.

18. That evening and on January 7, 2021, Connell posted, sent, or otherwise published to Facebook statements about the events at the Capitol. These statements were made to people other than Adams. These statements included, in relevant part:

    a.  January 6, 2021: "We headed to the trump rally protest in dc for the rigged election."

    b.  January 7, 2021: When asked "what was the reason to breaking in the Capitol...?" Connell responded, "[W]e breached it to let America know we're not standing down anymore."

    c.  January 7, 2021: "We were the first ones to breach the Capitol today. We got his [sic] with tear gas rubber bullets and batons. You damn right we got their attention. That

was the whole point of what we did today.  And today was just the start of something much bigger."

    d. January 7, 2021: "Hell yeah [congressmen and women] were scared.  They didn't expect a couple ole southern boys to get through all them damn police and knock the doors down!!!  A revolution is coming."

    e. January 7, 2021: "That's my cousin. When we stormed the cops there was 8 of them and 4 of us so he got clubbed and shot with rubber bullet. But we pushed the cops against the wall, they dropped all their gear and left. That's when we went to door of Capitol building and breach it."

    f. January 7, 2021: "Barriers weren't just taken down. They didn't let us through. We got the shit beat outta of but eventually pushed through the cops. [...] I was there! I was one of the first guys that breached the doors and got in. Antifa was not at the Capitol. BLM was not at the Capitol. They had cops with tear gas, flash bangs, rubber bullets, pepper spray! We got hit with all kinds of shit! But we kept pushing. We forces (*sic*) them to stand down. They had no other choice. They didn't just let us in the Capitol."

19. That evening and in days following, Adams posted, sent, or otherwise published to Facebook statements about the events at the Capitol. These statements were made to people other than Connell. These statements included, in relevant part:

    a. January 6, 2021: "Just to get things straight. It wasn't ANTIFA or BLM. It was pissed off American patriots."

    b. January 6, 2021: "Me and my cousin led the charge. We were the first ones in Don't show anyone this picture. [...] We were the ones who broke through the last barricade."

11

c. January 6, 2021: "You would of (sic) been proud. Lol shit got old school real quick after they hit me with the tear gas"

d. January 6, 2021: When asked "did you put any [police officers] down," Adams responded, "I think four of them."

e. January 7, 2021: "I got beat up pretty good getting through the cops."

f. January 7, 2021: "Every time an elected official operates outside the boundaries of the constitution we need to burn this motherfucker down until they start arresting people."

g. January 7, 2021: "I don't wanna put a whole lot on Facebook but you and I need to get together and I will show you some crazy shit."

h. January 10, 2021: "I was one of the first ones in the Capitol Building. [...] It was a fight at the beginning."

20. The Defendants knew at the time that they entered the Capitol that they did not have permission to enter the building. The Defendants obstructed, influenced, and impeded an official proceeding, that is, a proceeding before Congress, specifically, Congress' certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution and the Electoral Count Act (3 U.S.C. §§ 15-18).

12

**Application of Facts to the Elements of the Offenses**

*Count One: Civil Disorder*

Element 1 – At the head of a crowd, the defendants pushed against United States Capitol Police Officers J.G., T.M., B.S., B.M., and J.D., causing these officers to retreat up the Northwest Stairs pursued by the defendants and other rioters. *See* ¶¶ 12-13; *see also* Exhibits 3-7.

Element 2 – At the time of the defendants' actions against them, USCP Officer J.G., T.M., B.S., B.M., and J.D., were attempting to prevent rioters, who numbered far more than three persons and included the defendants, from advancing towards the Capitol via the Northwest Stairs. *Ibid.*

Element 3 – As a result of the riot and the defendants' contributions thereto, the Congress was forced to recess and the lawmakers to evacuate. *See* ¶¶ 5-7; see also Exhibit 14. Having caused the Congress to recess, this civil disorder adversely affected the performance of a federally protected function, that being the protective mission United States Capitol Police. *See* ¶ 3 & 7; *see also* Exhibit 14.

*Count Two: Obstruction of an Official Proceeding*

Element 1 – As a result of the defendants' breach of the restricted area and acts against law enforcement officers, they obstructed and impeded the certification of the results of the 2020 presidential election. *See* ¶¶ 3 & 7; *see also* Exhibit 14.

Element 2 – The defendants intended to obstruct or impede the official proceedings, that being the certification of the 2020 presidential election. *See* ¶¶ 18 – 19.

13

Element 3 – The defendants acted knowingly, with awareness that the natural and probable effect of their conduct would be to obstruct or impede the official proceedings. *See* ¶¶ 16 & 18-20.

Element 4 – The defendants acted corruptly. *See* ¶¶ 18-20.

*Count Two: Aiding and Abetting Obstruction of an Official Proceeding*

Element 1 – That others committed obstruction of an official proceeding by committing each of the elements of the offense charged. *See* ¶¶ 3-7.

Element 2 – That the defendants knew that obstruction of an official proceeding was going to be committed or was being committed by others. *See* ¶ 14; *see also* Exhibits 3-7, & 11.

Element 3 – That the defendants performed an act or acts in furtherance of the offense. *See* ¶¶ 12-13; *see also* Exhibits 3-7, & 11.

Element 4 – That the defendants knowingly performed an act or acts for the purposes of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceedings. *See* ¶¶ 12-13 & 18-19

Element 5 – That the defendants did that act or acts with the intent that others commit the offense of obstruction of an official proceeding. *See* ¶¶ 18-19.

*Count Three: Assaulting, Resisting, or Impeding Certain Officers*

Element 1 – The defendants assaulted, resisted, opposed, impeded, intimidated, or interfered with United States Capitol Police Officers J.G., T.M., B.S., B.M., and J.D. *See* ¶¶ 12-13; *see also* Exhibits 3-6.

14

Element 2 – The defendants did so with some use of force involving some physical contact or with the intent to commit another felony, namely the corrupt obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2). *Ibid.*; *see also* ¶¶ 18(e)-(f); ¶ 19(d).

Element 3 – That the defendants did such acts voluntarily and intentionally. *Ibid.*

Element 4 – The defendants did so while the officer or employee was engaged in or on account of the performance of official duties. *See* ¶ 12.

*Count Four: Entering and Remaining in a Restricted Building or Grounds*

Element 1 – The defendants entered or remained in the restricted area around the Capitol and the Capitol Building without lawful authority do so. *See* ¶¶ 1 - 2, 18(f), & 19(b); *see also* Exhibits 2-3

Element 2 – That the defendant did so knowingly. *See* ¶ 20.

*Count Five: Disorderly and Disruptive Conduct in a Restricted Building or Ground*

Element 1 – That the defendants engaged in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds. *See* ¶¶ 1-2 & 10-16; *see also* Exhibits 3-10.

Element 2 – That such conducted occurred when, or so that, such conduct, in fact, impeded or disrupted the orderly conduct of Government business or official functions. *See* ¶¶ 5-10; *see also* Exhibit 14.

Element 3 – That the defendants did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions. *Ibid.*; *see also* ¶¶ 18-19.

15

*Count Six: Disorderly Conduct in a Capitol Building*

Element 1 – The defendants engaged in disorderly or disruptive conduct in any of the United States

Capitol Buildings. *See* ¶¶ 15-17; *see also* Exhibit 8-10.

Element 2 – The defendants did so with the intent to impede, disrupt, or disturb the orderly conduct

of a session of Congress or either House of Congress. *See* ¶¶18-19.

Element 3 – The defendants acted willfully and knowingly. *See* ¶ 20.
SEVEN
*Count ~~Eight:~~ Parading, Demonstrating, or Picketing in a Capitol Building.*

Element 1 – The defendant paraded, demonstrated, or picketed in any of the United States Capitol

Buildings. *See* ¶¶ 15-17; *see also* Exhibit 8-10.

Element 2 – The defendant acted willfully and knowingly. *See* ¶ 20.

16

## Conclusion

Without waiving any arguments set forth in the defendants' Motion to Dismiss Count 2, ECF 77, or their objection to the Court's ruling denying their motion, the parties agree that if the Court finds the existence of these facts beyond a reasonable doubt, this evidence would establish each and every element of Counts 1 through 7 of the Criminal Information.

Respectfully submitted,

NED SMOCK
Attorney for Defendant
Cody Connell

SEAN MCCAULEY
TROY EDWARDS
Attorneys for the Government

GARY PROCTOR
Attorney for Defendant
Daniel Adams

17